NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

BOBBY RAYDEAN HOOVER, *Appellant.*

No. 1 CA-CR 14-0869
FILED 1-26-2016

---

Appeal from the Superior Court in Maricopa County
No. CR2012-124789-001
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

The Law Office of Kyle T. Green, Mesa
By Kyle Green
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Randall M. Howe joined.

---

**C A T T A N I**, Judge:

¶1　　　　Bobby Raydean Hoover appeals his convictions of attempted armed robbery, kidnapping, burglary in the first degree, misconduct involving weapons, and aggravated assault and the resulting sentences. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　　The victim, nicknamed "Chopper," sold heroin and methamphetamine out of his Phoenix apartment. One day in mid-2012, Hoover came into Chopper's apartment holding a short-barreled shotgun, moving it side-to-side to hold off Chopper and two other occupants. Two other individuals came in with Hoover and took several laptop computers and knives from the front room of the apartment.

¶3　　　　Meanwhile, Hoover approached Chopper, put the shotgun to Chopper's throat, and demanded all of his drugs and money. Although Chopper claimed not to have any, Hoover forced him back to a bathroom to look for prescription drugs. Not finding any drugs, Hoover hit Chopper over the head with the shotgun twice, knocking him out.

¶4　　　　Hoover was arrested in May 2012, and he was released in October 2012 pending trial. Trial commenced in August 2014, and a jury found him guilty of attempted armed robbery, kidnapping, burglary in the first degree, misconduct involving weapons, and aggravated assault. The court sentenced him to concurrent terms of imprisonment, the longest being 18 years, and Hoover timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13-4033.[1]

---

[1]　　　Absent material revisions after the relevant date, we cite a statute's current version.

**DISCUSSION**

¶5        Hoover argues the superior court erred by admitting into evidence a single exchange of Facebook messages sent to and from Hoover's account.  During a mid-trial break, the prosecutor presented the following exchange—sent in December 2012, after Hoover's release from jail pending trial—drawn from Hoover's Facebook account:

> [Hoover]: I'll find out in Jan. though because I'm headed back myself.
>
> [Recipient]: What the f***.  Why are you going back?
>
> [Hoover]: Remember Chopper?
>
> [Hoover]: He is snitching. He says I robbed him and pistol whipped him.

¶6        The full exchange ended with additional statements by the recipient: "Yeah, well, that's why I went to prison.  Because of Chopper." Recognizing that the recipient's reference to prison could create unfair prejudice, the prosecutor redacted the excerpt to delete the recipient's prison comment.

¶7        Hoover objected to the admission of the redacted excerpt. Although agreeing that the exchange had some probative value, Hoover objected under Arizona Rule of Evidence 403, arguing that the probative value was far outweighed by a danger of unfair prejudice because the message implicitly acknowledged that Hoover had previously been in prison.

¶8        After a lengthy discussion about the admissibility of the exchange, the court overruled Hoover's objection.  The court observed that the message presented an "incremental danger of unfair prejudice" and acknowledged that "certainly there is danger" in the jury learning that Hoover had been in prison, even though the jurors would know—through the misconduct involving weapons charge—that he was a felon.  The court nevertheless concluded that the message had substantial probative value given that the case squarely presented an issue of identity, and that the potential prejudice did not outweigh the probative value.  The court further expressed a preference to admit a more sanitized version that did not contain the reference to "going back" if the parties could craft one.  The parties did not do so, however, and the exchange was admitted over Hoover's objection.

¶9 Hoover argues that the Facebook message was unfairly prejudicial and thus should have been excluded under Rule 403. That rule grants the superior court discretion to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Ariz. R. Evid. 403. Evidence may create unfair prejudice if it "has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy or horror." *State v. Salamanca*, 233 Ariz. 292, 296, ¶ 17 (App. 2013) (citation omitted). Because Hoover raised this evidentiary objection before the superior court, we review the ruling for an abuse of discretion. *See State v. Cañez*, 202 Ariz. 133, 153, ¶ 61 (2002).

¶10 Although the fact that Hoover had previously served time in prison was not itself relevant, the superior court properly found the Facebook message was highly probative as a statement by Hoover himself suggesting consciousness of guilt, both as an implicit acknowledgement that he was likely to be convicted (and thus sent "back") as well as through the use of the term "snitching." The message was also relevant to establish Hoover's connection to Chopper, who Hoover had denied knowing during his post-arrest interview with police. Moreover, the portion of the exchange admitted in evidence did not expressly state Hoover had previously been in *prison*. Although the reference to "going back" reasonably implies a return to confinement of some kind, the jury had learned from other evidence—received at trial without a defense objection—that Hoover had been in jail before being released pending trial in this case. Thus, Hoover's reference to a possible return to confinement was not unduly prejudicial. A limiting instruction could have been given to direct the jury to the proper purpose for this evidence, but Hoover did not request one. Additionally, to the extent "going back" can be read to refer to prior incarceration for a prior offense, the superior court did not abuse its discretion by finding the fact that Hoover stipulated that he had a prior felony conviction (which could have led to the incarceration) decreased any resulting prejudice. In this context, Hoover has not shown the superior court erred by determining that the probative value of the Facebook message outweighed its limited potential prejudice. *See* Ariz. R. Evid. 403.

¶11 Hoover also offers three alternative arguments challenging admission of the Facebook message: (1) the State failed to establish adequate foundation for its admission, (2) the message improperly allowed the jury to consider penalty, and (3) the message constituted improper other act evidence under Rule 404(b). Because Hoover did not raise objections on these bases before the superior court, we review these claims only for fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19–20 (2005); *State v. Moody*, 208 Ariz. 424, 455, ¶ 120 (2004) (evidentiary

objection on one ground preserves the issue only as to the ground actually raised; other grounds asserted on appeal subject to fundamental error review).

**¶12**       Hoover does not dispute that the State established the message originated from his Facebook account; rather, he argues that anyone with access to the account could have sent the message. But a witness testified that Hoover was active on Facebook during the time period when the message was sent, and a witness confirmed that the subject matter of the message—particularly as regards to Chopper "snitching"—was consistent with Hoover's statements on other occasions. Accordingly, the jury had an adequate basis to conclude that Hoover authored the message. *See* Ariz. R. Evid. 901.

**¶13**       Next, Hoover asserts that admission of the message impermissibly allowed the jury to consider the possible penalty he faced. Although Hoover is correct that the jury's verdict must be based only on the evidence without regard to the possible penalty, *State v. VanDyke*, 127 Ariz. 335, 337 (1980), the Facebook message admitted here did not refer to prison at all, much less to a particular penalty. In fact, recognizing the concern that the jury could consider possible punishment, the court excluded a different message in which Hoover specified "I could be going back to prison for six or more years thanks to Chopper." In addition, the court instructed the jury that it was not to consider the possible punishment when deciding guilt. Because the Facebook message as admitted did not refer to possible punishment, Hoover has not shown error on this basis.

**¶14**       Finally, Hoover claims the Facebook message was inadmissible under Rule 404(b). That rule provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b). Here, the evidence was admitted for a relevant purpose to establish identity. Moreover, although Hoover argues that the message "essentially alerted the jury to other bad acts committed by [Hoover]," the text of the message did not refer to any "other" acts. Rather, the message referred to Chopper's statements regarding the charged offenses. In this context, Hoover has not established error.

## CONCLUSION

¶15        Hoover's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama